Michael Baldessari on behalf of Appellant John Cook. Also, judges, thank you for the lengthy postponement that was granted in this oral argument given the commitment I had before Judge Wiginton in the District of New Jersey. Your honors, I'd like to this morning present an argument regarding one of the issues raised in the appeal that I think the government is particularly uncomfortable talking about, and that is the law enforcement's decision to repeatedly manufacture and import criminal activity into the Southern District. In this agent, and in a total of, I think, 27 cases, the government has, or the law enforcement has designed essentially a cookie-cutter sting operation. That certainly in and of itself, there's certainly nothing wrong, obviously, with a sting operation, and there's certainly nothing wrong, and we don't contend there's anything wrong with doing it again and again if it works. But the problem with this sting operation is its reach. This sting operation, and many like it, and I- You say there have been many of them. Have any of them come before this court before? Not to my knowledge, no, Judge. This is a fairly, I would say, fairly recent series of cases. I've had, I have another one, I had another one with Mr. Discan as well, and basically the overview is this. There is a man named Jose Rodriguez who is facing essentially a life sentence, and he's trying to work his way down. And I had the opportunity to cross examine Mr. Rodriguez at John Cook's trial, and Mr. Rodriguez is what criminal defense attorneys and prosecutors would call the real deal. He committed actual crimes regarding actual drug dealers and actual drugs. And he has gone out at the law enforcement's request to ask people who he had possibly served time with, or otherwise knew, if they would be interested in robbing drug dealers. As the court knows, there never were any drugs. There was, Mr. Rodriguez went to Mr. Cook, who was essentially, and I'm not sure this is particularly disputed, it was essentially a penny ante drug dealer on the streets of Patterson in New Jersey, dealing in very small amounts of cocaine and heroin. And over the course of numerous phone calls, always, to my recollection, always placed by the government to Mr. Cook, multiple meetings, always when Mr. Rodriguez would go see Mr. Cook. I have the impression, perhaps wrongly, that Mr. Cook had a rather substantial criminal record. Is that not so? He did not, Judge. His co-defendants who pled, Mr. Gill and Mr. Wilson, were both career offenders, one of whom, I believe Mr. Gill had 27 criminal... The answer is no. Yeah. No. He did have an... I'm sorry, Judge. If we go to this particular case, I take your concern about the general pattern of the government's activity with respect to the sting operations involving Mr. Rodriguez. But just looking at this particular case, what is it that shocks the conscience? Yes, Your Honor. Focusing on this individual case, not everything else. Yes, Your Honor. Absolutely. I would submit that what shocks the conscience is law enforcement's putting in motion a chain of events where three individuals obtained very serious weapons and a bulletproof vest and drove into Manhattan. It wasn't like they did it because they were offered huge sums of, given or compelled to do it, right? I mean, that's what we in the district court and the jury has to look at. They were offered a million dollars in drugs, in proceeds, and certainly that would be, that would have been divvied up. But what I would submit shocks the conscience is that, and it is in this case, the government's reaching out to another jurisdiction, these defendants, Your Honor, had no ties to New York at all. So much to the point that in one of the ... You ever visited the Big Apple? Your Honor, they got lost on their way to the McDonald's on 125th Street. And there are audio tapes ... That's up to you, go ahead. Well, yes, Judge. But there were no ties to the point that in applying for one of the warrants for the phone, there was no basis for that warrant. And the warrant, I will say inadvertently by the agent, checked that the phone on the application, that the phone was or had been in New York. And it wasn't. And it never had been. And so they were offered a million dollars. That was to be divvied up. And at trial, Mr. Cook said even his share of $250,000, he said, where I'm from, $250,000 is a million dollars. And I think that what shocks the conscience of the court is the extent to which in this case the government drew from another jurisdiction three individuals. They told Mr. Cook and his co-defendants, come ready, because these are cowboys, to the point where Mr. Gill had a weapon at his feet, cocked, and ready to go. My client also had a weapon at his feet. And I believe that ... Can I move you on to ... I take your point to the jury instructions. Yes, Judge. Question. Now, you argue, as I understand, that the district court erred in allowing the jury to determine whether the drug trafficking conspiracy with which he was charged involved either five kilograms or more of cocaine, or 500 grams or more of cocaine, and whether the conspiracy involved either one kilogram or more of heroin, or 100 grams or more of But prior to trial, and correct me if I'm misunderstanding, the parties jointly submitted a proposed charge that included the instruction on quantity about which you now complain. And isn't there the case law that a defendant who is invited a challenge charged has waived any right to appellate review on? Yes, Judge. There's case law for that, and case law, as the court knows, whether or not one objects. In this case, we submitted ... I'm out of time, Judge. Should I ... Please continue. Yeah. So in this case, there were, as the court knows, in almost every trial, joint ... Mr. Discant and I did a joint submission. But it's always been the case, at least in my experience, that as the case goes in, it goes in sometimes a little differently, sometimes very differently. For example, in this case, we, I believe, submitted, I think it was an entrapment defense, and there was a pretty big fight as to whether or not enough had gone in. In this case, by the end of the case, the case simply went in in a way that there was no dispute. My own client took the stand and discussed the larger quantities, and there was never a dispute that this conspiracy and what the informant had said was for the larger quantities. As far as objecting ... What about, in terms of objecting to it at the charge conference, when you go through the record, any discussion about quantity comes in the middle of the discussion of 39-page transcript on entrapment. Yes, Judge. So how does that really alert the court to that objection? Yes, Judge. I believe it's ... Well, I have the page, but obviously the court knows it. When I was discussing with the court that the case simply didn't go in that way for the lower quantities, the prosecutor commented sort of on my objection to that. I will tell the court, do I wish I had articulated that objection better? Yes, I do. But I would urge the court to view that in a light so that my parlance doesn't prejudice Mr. Cook by subjecting him to a much higher standard of review. I don't know if it matters, but it certainly seems possible ... I mean, you were there and I wasn't, that the jury was, for a variety of reasons, sympathetic to your client. This was ... I hate to use this two words in this context, but it's a kind of a jury nullification. They said, let's see what we can do for him. That's quite possible, Judge. The government said in its opposition that we could not have done any better. I just disagree. It was clear, and of course we never know, but it seemed to me ... What did you revise your charge to ask for? What's your best articulation? Out of what you said, what is it that you wanted it stepped back to? Well, we simply wanted it to charge the higher quantity. What the government said the best we could do ... What the government was saying is the best we could have done was the lower amount. But I disagree. The best we could have done was to be acquitted on that count. And I believe, from being there and trying the case, that it was clear that this jury gave a lot of weight to the entrapment defense, because on the videos, I will tell your honors, there is no question that Mr. Cook, that all the elements seem to be there, and that the only way out of that Hobbs Act conviction was if they gave credence to the entrapment defense. As a matter of fact, at one point he said, I was trying to sell myself to do the robbery, to rob the drug dealers. And I think our position is that, with all due respect to the government, we could have done better in that if they disagreed with that higher amount, that they may have acquitted him of that. And if they acquitted him of that, the 924C conviction goes as well. Thank you. Thank you. Thank you, your honors. You'll have two minutes in rebuttal. Thank you, Judge. Good morning, and may I please the court, Edward Diskant, for the government. I also represented the government at trial. I want to start, if I may, just with this last issue on the jury instruction. From the government's perspective, the invited error doctrine does indeed preclude, or constitutes a true waiver, because it was part of the party's joint request. And I think, as Judge Sachs' question indicated, from the government's perspective, this may well have been a strategic decision by defense counsel to invite the jury in what was, in some respects, a close case, to reach a compromise. Having made that strategic decision, from the government's perspective, the law of this court does not permit the defendant on appeal to subsequently challenge it as erroneous. But even if there weren't a true error, excuse me, a true waiver situation, at bare minimum we would be talking about plain error, since from the government's perspective, there was no objection at all lodged below, either with respect to the jury instruction, or with respect to the verdict sheet, which similarly posed the questions on quantity, and to which there was no objection below. The only other point I wanted to address, and then certainly if the panel has questions, is this issue of the defendant's criminal history, which was, in fact, quite significant. It included a prior manslaughter conviction, it included a prior firearms conviction. Judge Nathan discussed this at some length in sentencing, in an imposing sentence. It was a very substantial consideration in imposing the sentence that was imposed below. So with that said, unless the panel has questions, I'm happy to rest on our submission. You didn't, so far as I could tell, respond to Mr. Cook's claim of a sentencing disparity among the sting operation targets. Would you like to say anything? Certainly. From the government's perspective, as an initial matter, there's no authority, and I don't believe the defendant, the appellant, cites to any for the proposition that a district court is expected to engage in some sort of statistical analysis in imposing sentence. Indeed, it would have been impossible for Judge Nathan to have done that, because many of the other sentences imposed post-dated the sentence of this defendant, and so there would have been no way for her to take those into account, even if she was obligated to do so. We believe the sentencing judge was obligated to do, and what Judge Nathan did, in fact, do here, is to consider the Section 3553A factors, which we believe she painstakingly did in crafting the sentence imposed. Do we have to decide whether a defendant can be rewarded for accepting a responsibility while maintaining an entrapment defense? Certainly the issue is presented. That particular legal question, I don't believe the court needs to resolve if it finds that there was no clear error in Judge Nathan's determination that this particular defendant did not accept responsibility. Leaving aside the entrapment defense for just a moment, both the guidelines themselves and the law of this court emphasize that there are limited situations in which a defendant may proceed to trial and still maintain or receive acceptance of responsibility credit, and all of them in the guidelines themselves direct a court to look at the defendant's pre-trial conduct. Judge Nathan's finding here was that there was nothing in the defendant's pre-trial conduct that evidenced an acceptance of responsibility, and so on that basis alone, the court could affirm the decision below without touching on the open legal issue of whether, under any circumstance, an entrapment defense could be consistent with acceptance of responsibility. Your adversary opens really with an indictment of the government's behavior as to a whole string of sting operations. Would you like to respond? Certainly, and I think Judge Hall's questions about coercion and intimidation and physical force, which is of course the standard for a finding of outrageous government conduct, is critical because none of those things are present here. In the case at Barr, as well as the other, what Mr. Baldessari called cookie-cutter cases, all the government did was use an informant to present an opportunity to the defendants, in this case and in others, to commit a crime. And typically the way that would work was that the informant would approach someone he knew from his prior criminal dealings. In this case, Mr. Rodriguez had a prior drug-dealing relationship with John Cook, the defendant here, and he told him about an opportunity to commit a crime, which, consistent with the Al-Qasr decision and the other prior decisions of this Court, is entirely permissible. So going case by case, there is no evidence of anything that would amount to what this Court has identified as outrageous government conduct. I should note in that respect that while this is the first of these cases to come up before this Court, at least on this issue, the outrageous government conduct claim has been litigated in many of these cases below, and it has been rejected by every district court to consider it for precisely that reason. Has that issue gotten to us through one of those cases? It has not yet, Your Honor. But the district courts below have all rejected it for precisely that reason, which is that applying the governing standard, looking for coercion, intimidation, physical force, none of that is present here. All that is present here is an entirely permissible use of an informant to present an opportunity to commit a crime. Thank you. A non-existent opportunity to commit a crime. Correct. Thank you. Mr. Balasarian. Just briefly. On the sentencing issue, I do believe there is authority for the Court to do the type of analysis that we urge, and I think that's 3553A6. And although . . . But didn't Judge Nathan address the 3553A factors in any event? Yes, Judge. But this case points up the precise problem with doing a 3553A6 analysis in the sense that this case, to look at national disparity or similar conduct, the truth is that this case is different in the sense that the extent . . . I did not find any cases where we have reached outside the jurisdiction. And I'm respectfully limiting it to this case, but I will tell the Court, and at least one other one, and I think many others, the other case, Mr. Diskant and I, it was Philadelphia. I do believe that the A6 analysis in this case respectfully would require . . . Did you raise any objections below on this point? We raised . . . and yes, we did. We raised an objection specifically with respect to this universe of cases and the sentences that had been given because there was no way for us to do a national analysis. So we did do that. With respect to acceptance, just very briefly, I believe that . . . Where can we find that objection? The objection in our brief. I believe it is the . . . It would be in our sentencing memorandum. I believe we briefed it extensively, and I did not look at the transcript of the . . . Joint Appendix 1068, is that . . . I believe so, Judge. And just very quickly with respect to acceptance, there is a carve-out under 3E11. If the defendant . . . I see my time is up. Finish. Yes. Thank you, Judge. If the defendant denies responsibility, which Mr. Cook didn't even do that in order to preserve a constitutional right, in this case, we believe it was the due process claim. And if I just may last say, Judge, coercion, intimidation, and physical force, respectfully, is not the standard. It's not the standard in any of the cases cited by the government, and it's not present in any of those. Thank you, Judge. Thank you, Judges. Thank you both for your arguments. The court will reserve decision. The clerk will adjourn court.